HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SEINE VESSELS RESERVE,

    Plaintiff,

and

ALCHEMIST, INC.,

    Plaintiff-Intervenor,

  v.

DUNLAP TOWING COMPANY, et al.,

    Defendants.

CASE NO. C09-633RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on a motion for partial summary judgment (Dkt. # 30) and a motion to amend the case scheduling order (Dkt. # 39) from Defendant Dunlap Towing Company ("Dunlap").  No party requested oral argument, and the court finds oral argument unnecessary.  For the reasons stated below, the court GRANTS both motions.

## II.  BACKGROUND

In July 2007, the barge SHELIKOF TRADER, under tow from the tug boat MALOLO, allided with the anchored F/V ALCHEMIST near the mouth of the Naknek River in Bristol Bay, Alaska.  Plaintiff-Intervenor Alchemist, Inc., the company that owns the ALCHEMIST, is a member of a marine insurance pool known as Seine Vessels

ORDER – 1

Reserve ("SVR").  SVR paid just over $180,000 to Alchemist, Inc., for damages the ALCHEMIST sustained in the allision.

SVR has a stop-loss insurance policy from National Casualty Company ("NCC") that provides coverage when SVR's aggregate claims in a calendar year exceed $1.1 million.  There is no dispute that SVR's aggregate claims in 2007 exceeded $1.1 million, although there is no evidence by how much those claims exceeded $1.1 million.  Agent Decl. ¶ 4.

Dunlap owns the SHEKILOF TRADER and the MALOLO.  Dunlap's entire fleet, including those two vessels, is covered by an insurance policy underwritten by a group of insurers that includes NCC.  NCC pays 50% of any covered loss under Dunlap's policy.  The policy provides, among other things, coverage for liability Dunlap incurs to others as a result of its negligence.  McLean Decl. (Dkt. # 31), Ex. B at p.30 (Collision & Tower's Liability clause).

SVR sued Dunlap in May 2009 for damages to the ALCHEMIST.  It is undisputed that SVR did so as the subrogee of the rights of Alchemist, Inc.  Agent Decl. ¶ 3.  It is not clear whether SVR is in turn acting as NCC's subrogor in this suit, although there is no indication to the contrary in SVR's briefing in the motions before the court.

Dunlap moved for summary judgment, asserting that NCC could not subrogate to SVR's claim against Dunlap because Dunlap is NCC's insured.  In opposing Dunlap's motion, SVR asserted among other things that Dunlap did not timely amend its answer to assert the subrogation defense.  Dunlap then filed a motion to amend the court's scheduling order to permit it to amend its answer.  The court now turns to both motions.

### III.  ANALYSIS

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a

ORDER – 2

judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party must first show the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), shifting the burden to the opposing party to show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must present probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The court defers to neither party when answering legal questions.  *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

**A.      NCC May Not Subrogate to SVR's Claim Against Dunlap.**

Dunlap invokes what it calls the "anti-subrogation rule" as a basis for granting summary judgment.  Although the court will examine the rule and its application in detail, it begins with a general discussion of the doctrine.  Various forms of what Dunlap calls the anti-subrogation rule prevent an insurer as subrogee from suing its own insured. Courts have articulated numerous policies supporting such a rule, one of which is the conflict of interest inherent in such suits.  An insurer cannot elevate its own interests above its insured's interests, and it is often difficult to sue an insured and protect his or her interests at the same time.

The potential for conflict of interest in this case is apparent.  SVR has paid the owners of the ALCHEMIST $180,000.  NCC has in turn paid SVR at least a portion of that amount under the stop-loss policy.  Because the record does not reveal how much NCC paid SVR, SVR's interest in this lawsuit is not clear.  It is certain, however, that NCC has an interest in this lawsuit because it can subrogate to at least a portion of any SVR recovery.  Dunlap, meanwhile, has a substantial interest in not being sued.  Because of its deductible, it must pay the first $100,000 of any judgment itself.  Although NCC insures Dunlap, NCC will pay nothing to cover an SVR judgment against Dunlap unless the judgment exceeds $100,000, and will pay only half of that excess.  The financial benefit to NCC of suing its own insured could thus be substantial.  Assume, for example,

ORDER – 3

that NCC paid at least $180,000 to SVR on the stop-loss policy, and that $180,000 is full compensation for the damage to the ALCHEMIST. In that case, if SVR prevails, Dunlap will be subject to a judgment for $180,000. Of that amount, Dunlap would pay $100,000 itself, the amount of its policy deductible. NCC as Dunlap's liability insurer would pay $40,000 (half the remaining $80,000), with the other underwriters on the liability policy paying the remaining $40,000. NCC would subrogate to the entire $180,000 judgment in SVR's favor, thereby gaining a net $140,000 by suing its own insured for the very negligence covered by the policy it sold its insured. This result would be very much in NCC's interest; it is decidedly not in Dunlap's interest.

The law, however, does not permit NCC's effort to subrogate to claims against Dunlap. Both federal maritime law and Washington law prohibit an insurer from subrogating to claims against its own insured.[1] *Frontier Ford, Inc. v. Carabba*, 747 P.2d 1099, 1100 (Wash. Ct. App. 1987) ("An insurer, however, has no right of subrogation against its own insured."); *Atlas Assur. Co. v. Harper, Robinson Shipping Co.*, 508 F.2d 1381, 1389 (9th Cir. 1975) (invoking "familiar doctrine that subrogation does not invest the underwriter with a right to override its obligation to its Assured"). In *Frontier Ford*,

---

[1] Although this case involves maritime insurance policies issued to Washington companies and an allision between vessels in Alaska, neither SVR nor Dunlap discuss what body of law should apply to their dispute. In general, state law, not federal maritime law, governs the interpretation of insurance policies. *Bank of San Pedro v. Forbes Westar, Inc.,* 53 F.3d 273, 275 (9th Cir. 1995) ("We, like Congress, leave the regulation of marine insurance where it has been - with the States.") (quoting *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 321 (1955)). Absent a "federal statute, a judicially fashioned admiralty rule, or a need for uniformity in admiralty practice," state law governs the interpretation of a maritime insurance policy. *Bohemia, Inc. v. Home Ins. Co.*, 725 F.2d 506, 509-10 (9th Cir. 1984); *see also Kitma AS v. Royal Ins. Co*., 9 P.3d 239, 242 (Wash. Ct. App. 2000) (noting that Washington choice of law rules employ the *Wilburn Boat* analysis). Washington courts defer to federal maritime rule where there is a need for uniformity. *Kitma*, 9 P.3d at 242 (applying federal maritime rule to dispute over insurance clause that was "particularly likely to arise between parties in different countries rather than in localized circumstances"). Because the need for uniformity in admiralty practice is not always apparent, "[w]hether federal or local law applies to a maritime insurance contract can present a troublesome question." *Kalmbach, Inc. v. Insurance Co. of Pennsylvania*, 529 F.2d 552, 554 (9th Cir. 1976). The parties cite precedent from a hodgepodge of jurisdictions. The court addresses the issues the parties raise under Washington and federal maritime law, and it discerns no material difference between the two for purposes of this dispute. By declining to address choice-of-law, the parties have waived the issue.

ORDER – 4

the insurer paid an insured auto dealership for damages caused by a customer to a vehicle during a test drive. 747 P.2d at 1100. The insurer then attempted, as the dealership's subrogee, to sue the customer. *Id.* Because the customer was an additional insured on the dealership's policy, the court held that the insurer could not subrogate to the dealership's claim against him. *Id.* at 1103.

In *Atlas*, the court refused to permit an insurer to subrogate indirectly to a claim against its insured. Atlas, the insurance company, insured Sterling, a shipper, for cargo aboard a vessel bound from Washington to the Netherlands. 508 F.2d at 1383. Cargill chartered the vessel to Sterling on a "Free In and Out" basis, meaning that Cargill was responsible for the cargo only during the voyage of the vessel, not while the cargo was loaded and unloaded. *Id.* at 1383 & n.2. The cargo's consignees received it in damaged condition, and made a claim against Atlas via insurance certificates that Sterling had issued them. *Id.* at 1384. Atlas paid the claim and then subrogated to the consignees' claims against whoever was responsible for the damage. *Id*. Atlas as subrogee sued Cargill, and Cargill impleaded Sterling. *Id.* The district court dismissed Atlas's complaint, ruling that Atlas was effectively suing Sterling, its own insured. *Id.* The Ninth Circuit affirmed. *Id.* at 1389 ("We cannot blind ourselves to the fact that a suit against Cargill is effectively a suit against Sterling."). The court held that despite the "circuitous" link between Atlas's suit and Sterling, the rule preventing an insurer from suing its insured in subrogation applied. *Id.*

The Washington Supreme Court has recognized that the anti-subrogation rule described above applies in a variety of circumstances. It noted in *Mahler v. Szucs* that no "right of subrogation can arise in favor of an insurer against its own insured since, by definition, subrogation exists only with respect to the rights of the insurer against third persons to whom the insurer owes no duty." 957 P.2d 632, 644 (Wash. 1998) (quoting *Stetina v. State Farm Mut. Auto. Ins. Co.*, 243 N.W. 2d 341, 346 (Neb. 1976)). *Mahler* was not directly concerned with the issue before this court, but the precedent it quoted,

ORDER – 5

*Stetina*, held that in a car accident between two drivers with State Farm automotive policies, State Farm could not subrogate to the innocent driver's claim against the at-fault driver. 243 N.W. 2d at 342, 347. In reaching that result, *Stetina* reviewed precedent from numerous other jurisdictions, all of whom bar insurers from subrogating to claims against their insureds. *Id.* at 344-346 (citing cases from Iowa, Alaska, Wisconsin, California, Louisiana, and Montana).

As Dunlap points out, courts within this District have recognized the doctrine as well. In *Royal Exchange Assur. of Am., Inc. v. SS PRESIDENT ADAMS*, 510 F. Supp. 581, 582 (W.D. Wash. 1981), the insurer paid a claim by a cargo holder, then attempted to subrogate to the cargo holder's claim against the shipper. The court refused to permit the subrogation, even though the subrogated claim exceeded the shipper's policy limits. *Id.* at 584 ("Public policy forbidding subrogation against one's own insured is based on the fact of insurance, not on the amount of coverage."). In an unpublished July 2001 order in *In re Western Pioneer, Inc.* (No. C00-1842C)[2], the Honorable John C. Coughenour cited *Mahler* and the "anti-subrogation rule" in dismissing an insurer's attempt to subrogate to the claim of its insured shipowner against another of its insured shipowners who was at fault in a collision.

There are exceptions to the anti-subrogation rule. In an unpublished 1995 order in *ITT Rayonier v. Foss Maritime Ins. Co.* (No. C93-1668WD), the Honorable William Dwyer declined to apply the rule where an insurance company subrogated to a claim against its insured, but the insured merely had an excess insurance policy that would not be triggered by the insurer's suit. In an unpublished April 2000 order in *John Deere Insurance Co. v. Fireman's Fund Am. Ins. Co.* (C98-1401P), the Honorable Marsha J. Pechman declined to extend the anti-subrogation rule to prevent an insurer from suing its insured where it was plain that the insured's policy did not cover the claim in question.

---

[2] Dunlap attached copies of all unpublished orders not available on commercial electronic databases as exhibits to its summary judgment motion.

ORDER – 6

Having surveyed decisions applying the anti-subrogation rule, the court concludes that it applies here. SVR's efforts to distinguish this case are unavailing. For example, it points out that insurers other than NCC are responsible for half of the amount of any judgment against Dunlap, minus its deductible. This is a distinction without a difference, because regardless of the amount for which Dunlap will ultimately be liable, SVR's suit against it is in NCC's interest and not Dunlap's interest. As the court noted in *Royal Exchange*, the policy against suing one's own insured depends not on the amount at stake, but on the mere fact that the insurer covers some portion of that amount. 510 F. Supp. at 584. SVR's reliance on *Rosato v. Karl Koch Erecting Co.*, 865 F. Supp. 104 (E.D.N.Y. 1994), is misplaced. Although the *Rosato* court stated that the anti-subrogation rule applies where "there is essentially one policy in effect purchased from a single insurer," *id.* at 108, the *Rosato* court applied New York law. *Id.* at 107 n.3. As the cases cited above demonstrate, neither Washington law nor federal maritime law requires that a single policy cover both the insured subrogor and the insured being sued to invoke the anti-subrogation rule.

Before leaving subrogation issues behind, the court notes that it is not clear to what extent they dispose of this case. Dunlap itself denominated its motion as one for "partial" summary judgment. It is not entirely certain, for example, whether NCC has formally subrogated to SVR's claim against Dunlap. The court assumes that it has, largely because SVR did not deny that it was NCC's subrogor in response to these motions. Nonetheless, SVR may have an interest in pursuing this suit on its own behalf. It is possible, for example, that NCC did not fully compensate SVR for its payments on behalf of the ALCHEMIST, and thus SVR stands to gain in its own right from this suit. The parties have not illuminated this issue in their briefing. The court's holding in this case, therefore, is merely that to the extent SVR is suing Dunlap as NCC's subrogor, it may not do so, and its claims are dismissed to that extent.

ORDER – 7

### B. Dunlap Timely Asserted Its Anti-Subrogation Defense.

SVR's sole other attempt to avoid the anti-subrogation rule is procedural. Dunlap did not raise the anti-subrogation rule as an affirmative defense in its answer, and the deadline to amend pleadings in this case passed on January 13, 2010. The court assumes, solely for purposes of these motions, that Federal Rule of Civil Procedure 8(c) requires a party to assert the anti-subrogation rule as an affirmative defense. Even so, a party seeking to modify its answer to assert an affirmative defense after the deadline for amended pleadings has passed needs only show "good cause" for the amendment. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992); Fed. R. Civ. P. 16(b)(4). Dunlap has good cause to amend despite the court's scheduling order so long as it could not have reasonably met the deadlines in that order in the exercise of ordinary diligence. *Johnson*, 975 F.2d at 609.

The court finds that Dunlap exercised appropriate diligence in investigating the extent of NCC's subrogation interest. When SVR produced its claim file in discovery in September 2009 (Kehoe Decl. (Dkt. # 43) ¶ 1), there were no documents indicating that SVR had accrued sufficient aggregate claims to trigger the NCC stop-loss policy, and no documents indicating that NCC would subrogate.[3] Kehoe Decl. (Dkt. # 43), Ex. 1; McLean Decl. (Dkt. # 46) ¶ 3. The documents at best indicate that NCC (through its local agent) was monitoring SVR and its claim against Dunlap. *Id.* Dunlap's counsel began inquiring about the stop-loss policy no later than January 2010, about the same time as the deadline for amended pleadings. McLean Decl. (Dkt. # 46) ¶ 4. He inquired again in February. *Id.* ¶ 5. There is no evidence, however, that he was told that NCC had made payments to SVR under the stop-loss policy until SVR's counsel sent him a letter on March 7. *Id.* ¶ 6; Kehoe Decl. (Dkt. # 43) ¶ 3. Indeed, the record reflects that SVR

---

[3] Although the documents mention subrogation, they do not make clear whether they refer to SVR's right to subrogate to the ALCHEMIST's claims against Dunlap or NCC's right to subrogate to SVR's claims. Kehoe Decl., (Dkt. # 43), Ex. 1. Absent any indication that SVR had passed the $1.1 million threshold of the stop-loss policy, there was no reason to assume that the documents referred to NCC's subrogation rights.

ORDER – 8

was not forthcoming with information.  For example, in a January 2010 conversation in response to Dunlap's counsel's request for information about the stop-loss policy, SVR's counsel merely revealed the terms of the stop-loss policy, not whether SVR had exceeded its $1.1 million aggregate claims threshold.  Kehoe Decl. (Dkt. # 43) ¶ 2.  Dunlap filed its summary judgment motion less than a month after it first learned that SVR had exceeded the NCC's stop-loss policy's threshold in 2007.  Under these circumstances, the court finds good cause for Dunlap to amend its answer even though the deadline for amended pleadings has passed.  Dunlap could have been more aggressive in uncovering the extent of NCC's subrogation interest in this suit, but it was not required to do so, particularly where SVR has known since at least January 2010 that Dunlap was interested in determining if NCC had a subrogation interest.  *Johnson*, 975 F.2d at 609 (noting prejudice to opposing party is relevant in assessing good cause).

Finally, to the extent that Dunlap must satisfy Federal Rule of Procedure 15(a) in addition to its showing of good cause, it does so easily, for the reasons stated above.

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS Dunlap's motion for partial summary judgment (Dkt. # 30) and GRANTS its motion to amend (Dkt. # 39) its answer to assert an anti-subrogation defense.  To the extent SVR sues in this suit as NCC's subrogor, the suit is dismissed.  As noted above, it is not clear if this order disposes of this case in its entirety.  This matter is set for trial on July 12, 2010.  The court assumes the parties will clarify what remains of this action in their pretrial filings, if not sooner.

DATED this 10th day of June, 2010.

_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 9